# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ERIC DEON MOORE,                    )
                                    )
                    Petitioner,     )
                                    )
v.                                  )          Case No. 12-CV-0255-CVE-FHM
                                    )
ROBERT PATTON, Director,[1]         )
                                    )
                    Respondent.     )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner, a state prisoner appearing pro se. Respondent filed a response to the petition (Dkt. # 7), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 7, 8). Petitioner filed a reply (Dkt. # 10). For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

## *BACKGROUND*

On June 28, 2007, during the late evening hours, Lenn Darnell Barnes was shot three times on a residential street in Bartlesville, Oklahoma. Barnes survived the shooting. Several neighbors heard gunshots, but no one claimed to have seen the shooting. Following an investigation by law enforcement officials, Petitioner Eric Deon Moore was charged in Washington County District Court, Case No. CF-2007-274, with Shooting With Intent to Kill. Petitioner was tried by a jury on

---

[1]     Petitioner is currently in custody at the Cimarron Correctional Facility, a private prison located in Cushing, Oklahoma. Therefore, the proper respondent in this action is Robert Patton, Director of the Oklahoma Department of Corrections. For that reason, Robert Patton, Director, is hereby substituted as party respondent in place of Mike Addison, Warden. The Clerk of Court shall be directed to note the substitution on the record.

January 12-15, 2010. Although Petitioner testified at trial and presented his defense of self-defense,[2] the jury found him to be guilty as charged. On February 19, 2010, the trial judge sentenced Petitioner to twenty-five (25) years imprisonment, in accordance with the jury's recommendation. Petitioner was represented during trial proceedings by attorney Mark Kane.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Kimberly D. Heinze, Petitioner raised the following propositions of error:

Proposition 1: The prosecution improperly commented upon Mr. Moore's right to remain silent in their case-in-chief, in violation of his Fifth Amendment rights under the United States Constitution and corresponding provisions of the Oklahoma Constitution.

Proposition 2: Improper restriction on impeachment of a key prosecution witness for bias, motive and prejudice denied Mr. Moore a fair trial.

Proposition 3: Prosecutorial misconduct at Mr. Moore's trial deprived him of a fundamentally fair trial and resulted in an inflated sentence.

Proposition 4: The trial court's refusal to timely poll the jury produced unreliable verdicts denying Mr. Moore's constitutional rights to due process of law and a fundamentally fair trial.

---

[2]    Petitioner testified to the following version of events: on the night of the shooting, he and Barnes were both present at a neighbor's party, (Dkt. # 8-3, Tr. Vol. III at 44); during the party, he gave Barnes permission to use his bedroom to have sex with a woman who was also at the party, id. at 46; later, when Petitioner returned to the bedroom, he found that a box containing a .44 magnum revolver, loaned to him by a friend, Coleman McIlvain, was missing, id. at 47; Petitioner, armed with his own .38 revolver, confronted Barnes who was sitting outside on a porch, id. at 49-50; Barnes pulled the .44 out of his pants and fired first at Petitioner, id. at 51; Barnes' shot hit Petitioner in the left calf, id. at 52; Petitioner showed the jury a scar on his left calf allegedly caused by the gunshot, id. at 51-52, 72-73; Petitioner fired his gun at Barnes who stumbled, fell, and dropped the .44 magnum, id. at 52; Petitioner picked up the .44 magnum, threw his .38 revolver into the garbage, and went to the home of his friend, Angie Green, id. at 54; McIlvain showed up and gave Petitioner a ride to the house of Petitioner's girlfriend in Tulsa, id. at 55-56; from Tulsa, Petitioner went to his hometown of Yazoo City, Mississippi, id. at 58.

Proposition 5: The assessment of a court reporter fee for each day of trial, rather than the statutorily authorized fee for each trial, is void and must be set aside.

Proposition 6: Any failure to preserve issues for review was the result of the ineffective assistance of counsel.

Proposition 7: The cumulative effect of all the errors addressed above deprived Appellant of a fair trial.

See Dkt. # 7-1. In an unpublished opinion, filed March 14, 2012, in Case No. F-2010-152 (Dkt. # 7-3), the OCCA affirmed the Judgment and Sentence of the district court, but, after finding merit to Petitioner's fifth proposition of error, remanded the case for correction of the Judgment and Sentence, nunc pro tunc, to reduce Petitioner's assessed costs to a single $20.00 court reporter fee for the entire trial. Id. at 26. The OCCA also denied Petitioner's motions for a new trial, to supplement the record, and for an evidentiary hearing. Id. Nothing in the record suggests that Petitioner sought certiorari review by the United States Supreme Court or post-conviction relief in the state courts.

On May 1, 2012, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). In his petition, Petitioner identifies the same seven (7) grounds for relief he raised on direct appeal. See Dkt. # 1. In response to the petition, Respondent asserts that, to the extent Petitioner's claims are cognizable on federal habeas corpus review, Petitioner is not entitled to relief under 28 U.S.C. § 2254(d). See Dkt. # 7.

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455

U.S. 509, 510 (1982). Upon review of the petition and the state court record, the Court finds that Petitioner exhausted his state court remedies by presenting his claims to the OCCA on direct appeal.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA (grounds 1-7)**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 101-03 (2011); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's grounds 1-7 on direct appeal. Insofar as Petitioner claims violations of the United States Constitution, his claims will be reviewed pursuant to § 2254(d). To the extent Petitioner also claims violations of the Oklahoma Constitution or

Oklahoma statutory law, those claims are denied because they are not cognizable on federal habeas corpus review. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

### 1. Comment on Petitioner's right to remain silent (ground 1)

As his first proposition of error, Petitioner refers the Court to page 11 of his brief filed in his state direct appeal, and alleges that the prosecutor improperly elicited testimony from Bartlesville Police Officer Jim Warring regarding Warring's pre-arrest telephone contact with Petitioner and that the testimony was improper comment on Petitioner's pre-arrest right to remain silent. (Dkt. # 1 at 5). In analyzing this claim on direct appeal, the OCCA provided the following factual summary:

> Moore complains specifically about testimony by Bartlesville police officer Jim Warring in which Warring described an interview with a woman who knew Moore that occurred shortly after the shooting. According to Warring, as he interviewed the woman, she received a telephone call from a man she identified as Moore. The woman handed her telephone to Warring and Warring identified himself as a police officer. The male caller mumbled something then hung up. Under questioning by the prosecutor, Warring said the caller told him nothing about the circumstances of the shooting, or that he had been shot, or that he needed medical attention, or that he had been required to use his own gun to defend himself against a gunman.

(Dkt. # 7-3 at 2-3). Defense counsel did not object to the prosecutor's questions as they were being asked. See Dkt. # 8-1, Tr. Vol. I at 190-91. He did, however, move for a mistrial after all of the questions had been asked and answered. Id. at 192. The motion for a mistrial was denied. Id. at 194. In addition, during his closing argument, the prosecutor emphasized Petitioner's failure to give

Warring details during the telephone call. See Dkt. # 8-3, Tr. Vol. III at 104-05. Again, defense counsel lodged no objection to the prosecutor's comments.

Based on that record, the OCCA found that the motion for a mistrial was not "sufficiently timely to preserve the error for appeal" and, therefore, reviewed for plain error. See Dkt. # 7-3 at 3. Because the State presented Warring's testimony "as part of the State's case-in-chief **before** Moore testified that he acted in self-defense," the OCCA determined that Warring's testimony was not impeachment evidence, but was instead offered as "substantive evidence of Moore's guilt supporting the State's contention that Moore did not act in self-defense when he shot Barnes." Id. at 5-6. After discussing federal and state court splits on the issue of using non-impeachment evidence of a defendant's pre-arrest silence, the OCCA found that:

> Because neither the United States Supreme Court nor this Court have spoken directly to this issue, and because other courts that have considered the question are seriously split, it cannot be said that the alleged error was plain or obvious. This fact by itself is sufficient to dispose of this claim under plain error review. *See Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923 (holding that to be entitled to relief under plain error analysis, an appellant "must prove," among other things, that the error complained of is "plain or obvious").
>
> Nevertheless, even if it is assumed that presentation of such evidence is a plain or obvious infringement on a defendant's constitutional rights to silence, any such error was harmless. That is, the error, if such it be, fails the third prong of our plain error test requiring that an appellant show that the alleged error affected the jury's verdict. *See Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923 (holding that to be entitled to relief under plain error analysis, an appellant "must prove," among other things, "that the error affected his substantial rights, meaning the error affected the outcome of the proceeding").

(Id. at 7-8). After reviewing the trial testimony of other witnesses who were non-state actors, the OCCA cited, inter alia, United States v. Zanabria, 74 F.3d 590, 593 (5th Cir. 1996) (holding that pre-arrest silence that is "neither induced by nor a response to any action by a government agent" is not

"compelled self-incrimination" and therefore falls outside ambit of Fifth Amendment protections),

and concluded its analysis of this claim by stating as follows:

> If Officer Warring's testimony about Moore's pre-arrest silence had been excluded as improper substantive evidence of guilt, the exclusion of that testimony, and the prosecutors' comments on it, would not have been outcome determinative given the strength of the remaining evidence. Moore admitted shooting Lenn Barnes, and Barnes's own testimony was consistent with the physical evidence. Furthermore, as noted above, no one who saw Moore on the night of the shooting noticed the gunshot wound he claimed to have received. In addition, the State presented evidence that Moore had told one friend that he shot someone because he had been "disrespected," and had told another friend that he shot someone for pulling a knife on him. In light of this evidence, we are confident that Officer Warring's testimony, and the prosecutors' comments on it, if error, did not contribute to the verdict. We find no plain error.

(Dkt. # 7-3 at 11-12).

In response to the petition, Respondent argues that Petitioner has not shown that the OCCA's

decision "resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). While Supreme Court precedent clearly establishes "that the Fifth Amendment

is not violated by the use of pre-arrest silence to impeach a criminal defendant's credibility," Jenkins

v. Anderson, 447 U.S. 231, 238 (1980), the Supreme Court has not "clearly established" that pre-

arrest silence may not be used to establish guilt. See Carter v. Ward, 347 F.3d 860, 863-64 (10th

Cir. 2003) (stating that "the Supreme Court has not yet ruled on whether pre-Miranda[3] or prearrest

silence . . . is protected by the Fifth Amendment so as to proscribe its use by the prosecution on the

issue of guilt"); see also Lane v. Jones, 2012 WL 6643095, *6 (W.D. Okla. Aug. 2, 2012)

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

(unpublished).[4]  Because "the Supreme Court specifically left that issue undecided," Carter, 347

F.3d at 864, "[t]he absence of clearly established federal law is dispositive under § 2254(d)(1)."

House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008) (citing Carey v. Musladin, 549 U.S. 70

(2006)).  Without clearly established Supreme Court jurisprudence on the issue, it is not necessary

to reach the questions of whether the state court decision was either contrary to or an unreasonable

application of federal law as determined by the Supreme court.[5]  Id.  Under § 2254(d)(1), Petitioner

is not entitled to habeas relief on this issue.

### 2.  Improper restriction on impeachment of key witness (ground 2)

As his second proposition of error, Petitioner alleges that he was denied a fair trial when the

trial judge improperly restricted his ability to impeach a key prosecution witness, Coleman

McIlvain, to establish bias, motive, and prejudice.[6]  See Dkt. # 1 at 6.  McIlvain testified that he and

Petitioner "hung out together," and that he was with Petitioner at Angie Green's house shortly after

the shooting.  (Dkt. # 8-2, Tr. Vol. II at 106, 109).  Petitioner was in possession of a .44 magnum

revolver that belonged to McIlvain.  Id. at 110.  Petitioner told McIlvain that he had shot a guy, but

---

[4]     This unpublished opinion is cited for persuasive value.  See 10th Cir. R. 32.1(A).

[5]     Even if admission of Warring's testimony violated his rights under the Fifth Amendment,
the error in this case was harmless under the standard defined in Brecht v. Abrahamson, 507
U.S. 619, 638 (1993) (finding that a constitutional error "requires reversal only if [the error]
had substantial and injurious effect or influence in determining the jury's verdict").  As
discussed in greater detail herein, four other witnesses who were not police officers or other
state actors testified that they saw Petitioner shortly after the shooting and he did not appear
to be injured and did not complain of any injury.

[6]     On direct appeal, Petitioner argued that, at the time of Petitioner's trial, McIlvain had a
pending sentencing hearing on the State's motion to accelerate his deferred sentences for
four (4) felony crimes of dishonesty or untruthfulness.  Appellate counsel asserted that
"available evidence established lenient treatment indicative of a tacit, if not explicit, promise
of leniency from [the prosecutor] in exchange for Mr. McIlvain's testimony against Mr.
Moore."  (Dkt. # 7-1 at 27).

Petitioner did not complain of any injuries to himself. Id. at 109, 118. That night, McIlvain and his girlfriend, Julia Jones, gave Petitioner a ride to Tulsa, Oklahoma. Id. at 121. McIlvain returned to Bartlesville and recovered his .44 magnum from Green's house where Petitioner had hidden it. Id. at 123.

In resolving this claim on direct appeal, the OCCA stated that Petitioner argues that "by denying him the opportunity to present evidence of McIlvain's deferred sentences, the trial judge prevented him from exploring whether McIlvain had a tacit or explicit agreement with the prosecutor for leniency regarding his deferred sentences in exchange for his testimony." See Dkt. # 7-3 at 12. Citing state law, the OCCA found that because deferred sentences are not a proper subject for impeachment, "[t]he trial court did not abuse its discretion by refusing to allow Moore to question McIlvain about the existence of the deferred sentences." Id. at 13. The OCCA further noted that the trial judge's ruling did not preclude defense counsel from questioning McIlvain about his expectations of leniency or any agreement he might have had with prosecutors, nor did the ruling preclude questioning about the dishonest conduct underlying the deferred sentences. Id. at 13-14. The OCCA concluded that Petitioner "was not denied a fair trial by the trial court's ruling that defense counsel could not question Coleman McIlvain about his deferred sentences as if they were felony convictions for crimes of dishonesty." Id. at 14.

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. McGuire, 502 U.S. at 67-68 (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v.

Hodges, 423 U.S. 19, 21 (1975)). For that reason, a habeas court "'will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). Thus, to the extent the claim may implicate Petitioner's constitutional rights, he must demonstrate that his trial was rendered fundamentally unfair by the trial court's ruling regarding admission of the testimony. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (holding that habeas corpus relief cannot be provided on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results" (quoting Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir. 2000))).

After reviewing the trial transcripts, the Court finds that the OCCA's rejection of Petitioner's claim on direct appeal was neither contrary to, nor an unreasonable application of, these general principles. The OCCA's summary of the State's case was accurate and its conclusion that Petitioner had failed to demonstrate that he suffered prejudice based on the trial court's ruling limiting defense counsel's cross-examination of Coleman McIlvain was not erroneous. Furthermore, based on the strength of the State's evidence against Petitioner, the trial judge's ruling did not render Petitioner's trial fundamentally unfair.

To the extent Petitioner argues that the trial judge's ruling resulted in a violation of his rights under the confrontation clause, his claim is without merit. The primary purpose of the confrontation clause is to secure for a defendant the opportunity of cross-examination. Davis v. Alaska, 415 U.S. 308, 315-16 (1974). Cross-examination is designed to allow an opponent to test the perception and memory of the witness and to expose witness bias. Id. at 316. The confrontation clause, however,

does not prevent a trial judge from imposing limits on defense counsel's inquiry. <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986). On the contrary, trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of the issues or interrogation that is only marginally relevant. <u>Id.</u> A violation of the confrontation clause is stated by a showing that the defendant was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of witness bias. <u>Id.</u> at 680.

In this case, the trial judge simply ruled that, under state law, a deferred sentence was not a conviction and confirmed that McIlvain had testified he had no felony convictions. (Dkt. # 8-2, Tr. Vol. II at 139-40). Thus, the ruling served to limit defense counsel's question about the existence of McIlvain's deferred sentences. However, Petitioner has failed to demonstrate that the ruling prevented him from engaging in otherwise appropriate cross-examination of McIlvain with regard to whether he had any promises of expectations of leniency in exchange for his testimony. For that reason, there was no confrontation clause violation and Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

### 3. Prosecutorial misconduct (ground 3)

In ground 3, Petitioner alleges that prosecutorial misconduct deprived him of "a fundamentally fair trial and resulted in an inflated sentence." <u>See</u> Dkt. # 1 at 8. On direct appeal, Petitioner complained that the prosecutor (1) improperly commented on his right to remain silent, (2) misled the jury regarding a key witness's motive to lie, (3) vouched for the credibility of a witness, (4) again commented on his right to remain silent, (5) attempted to shift the burden of proof,

and (6) offered a personal opinion of Petitioner's guilt and the appropriate punishment. (Dkt. # 7-1 at 32). On direct appeal, the OCCA reviewed only for plain error, since none of the allegedly improper statements drew an objection, and found that "[h]aving reviewed the prosecutors' statements in their full context, and within the context of the entire trial, we find that none of the statements rise to the level of plain error." See Dkt. # 7-3 at 15.

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly, 416 U.S. at 642-48; Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). In other words, "absent the infringement of a specific constitutional right, prosecutorial misconduct can result in constitutional error if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" DeRosa v. Workman, 679 F.3d 1196, 1222 (10th Cir. 2012) (quoting Donnelly, 416 U.S. at 643). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006). To determine whether a trial is rendered fundamentally unfair, the Court examines the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase," as well as "[a]ny cautionary steps - such as instructions to the jury - offered by the court to counteract improper remarks." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the

prosecution." <u>Fero v. Kerby</u>, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); <u>see</u> <u>also</u> <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

For the reasons discussed below, the Court agrees with the OCCA that Petitioner's ground three allegations of prosecutorial misconduct, when viewed in the context of the entire trial, did not result in a fundamentally unfair trial.

### a. Comments on Petitioner's pre-arrest silence elicited from police officer

On direct appeal, Petitioner complained that the prosecutor improperly "elicit[ed] testimony and repeatedly comment[ed] on Mr. Moore's right to remain silent." (Dkt. # 7-1 at 32). As noted above, even if the prosecutor's questioning of Warring resulted in a violation of the Fifth Amendment, the error was harmless in light of all of the evidence presented at trial. Petitioner's trial was not rendered fundamentally unfair as a result of the questioning. Furthermore, the prosecutor's reference to Warring's testimony during closing argument to prove that Petitioner did not act in self-defense when he shot Barnes did not result in a fundamentally unfair trial. Applying the § 2254(d) deferential standard of review, the Court cannot say that the OCCA's decision with regard to this claim of prosecutorial misconduct was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on this claim.

### b. Misleading the jury with regard to a key witness's motive to lie

Next, on direct appeal, Petitioner complained that the prosecutor improperly misled the jury with regard to a key witness's motive to lie. (Dkt. # 7-1 at 32). Although Petitioner does not provide factual support for this claim in either his habeas petition, <u>see</u> Dkt. # 1 at 8, or on direct appeal, <u>see</u> Dkt. # 7-1 at 32-39, it is likely Petitioner intended to cite the prosecutor's comments,

made during closing argument, questioning whether state's witnesses McIlvain and Andrew Kinney[7] had any reason to lie. <u>See</u> Dkt. # 8-3, Tr. Vol. III at 110. "'It is unprofessional conduct for a lawyer intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.'" <u>United States v. Young</u>, 470 U.S. 1, 9 n.7 (1985) (quoting ABA Standard for Criminal Justice 4-7.8). However, upon review of the entire trial transcript, the Court finds Petitioner has failed to demonstrate that the prosecutor misstated the evidence. For that reason, the comments were not improper.

Furthermore, the trial court instructed the jury to decide the case on the basis of the evidence presented. <u>See</u> Dkt. # 8-3, Tr. Vol. III at 89 (reflecting that jury received OUJI-CR2d 10-1 (informing the jury that it "should not consider any matter of fact or of law except what has been given to you while this court is or has been in session")). The strength of the prosecution's case and the fact that the jury was properly instructed support the OCCA's decision with regard to this claim. <u>See</u> <u>United States v. Ramirez</u>, 63 F.3d 937, 944-45 (10th Cir. 1995) (holding that prosecutorial misconduct did not warrant reversal because, inter alia, the court instructed the jury to decide the case based on the evidence presented). Petitioner is not entitled to habeas corpus relief on this claim.

### c. Vouching for witness credibility

The Court also finds that the prosecutor did not impermissibly vouch for the credibility of witness Patrick Weekly or of Darnell Barnes, the shooting victim. On direct appeal, Petitioner

---

[7]     Andrew Kinney shared a bedroom with Petitioner at a home near the site of the shooting. (Dkt. # 8-2, Tr. Vol. II at 6). Kinney testified that on the day after the shooting, he talked to Petitioner on the telephone. <u>Id.</u> at 9. Petitioner told him that he had shot somebody over "disrespect." <u>Id.</u> Petitioner did not say anything about being injured. <u>Id.</u> at 11.

argued that, during opening argument, the prosecutor improperly vouched for the credibility of the victim, and that, during closing argument, the prosecutor improperly vouched for the credibility of witness Patrick Weekly. (Dkt. # 7-1 at 33). In both instances, the prosecutor stated that witnesses were in court to tell the truth. See Dkt. # 8-1, Tr. Vol. I at 173-74; Dkt. # 8-3, Tr. Vol. III at 130.

Argument or evidence is permissible vouching unless "'the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.'" Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005) (quoting United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005) (internal quotation marks omitted)); see also United States v. Bowie, 892 F.2d 1494 (10th Cir. 1990). A habeas claim of improper prosecutorial vouching is reviewed for a denial of due process and the court "'must find that the absence of [fundamental] fairness infected the trial [and] the acts complained of must be of such quality as necessarily prevents a fair trial.'" Parker v. Scott, 394 F.3d 1302, 1310-11 (10th Cir. 2005) (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)).

Nothing in the trial record reflects impermissible vouching. As to the testimony of Weekly and Barnes, the prosecutor did not state a personal belief in either witness's credibility. The prosecutor's comments did not necessarily prevent a fair trial. Petitioner is not entitled to habeas corpus relief on this claim.

### d. Comment on right to remain silent

Petitioner further complained on direct appeal that, during closing argument, the prosecutor continued her improper "attack on Mr. Moore's right to remain silent" when she argued:

> [T]he defendant confessed to at least two people that he shot someone on June 27th three times but he never told anybody, until he testified yesterday, that he had been

shot? . . . I submit to you that common sense will lead you to the conclusion, that he didn't tell them that because he hadn't come up with the story yet. That's why it was heard for the first time on the stand yesterday.

(Dkt. # 7-1 at 34-35 (citing Tr. III at 110-11)).

These comments were fair comment on the evidence presented at trial and did not violate Petitioner's Fifth Amendment right to remain silent. "The sole concern of the Fifth Amendment, on which <u>Miranda</u> was based, is governmental coercion." <u>Colorado v. Connelly</u>, 479 U.S. 157, 170 (1986). The prosecutor cited evidence presented at trial demonstrating that, shortly after the shooting, Petitioner told his friends, McIlvain and Kinney, that he had shot someone but did not tell them that he had been shot. <u>See</u> Dkt. # 8-3, Tr. Vol. III at 106-07, 109, 110-111. Because the prosecutor was not referring to Petitioner's failure to divulge information to the police or other law enforcement authorities, the comment did not infringe on Petitioner's Fifth Amendment right to remain silent. As a result, these comments were not improper. Petitioner is not entitled to habeas corpus relief on this claim.

### e. Shifting the burden of proof

Petitioner also argued on direct appeal that, during closing argument, the prosecutor improperly shifted the burden of proof by asking why Petitioner had failed to call a witness to support his testimony that the victim had used Petitioner's bed to have sex. (Dkt. # 7-1 at 35). The prosecutor stated "I come back again to the girl that caused the blood stain. Where's this girl at? If this girl exists why doesn't Mr. Moore bring her in here?" (Dkt. # 8-3, Tr. Vol. III at 133).

While it is well settled that a prosecutor may not comment on the defendant's exercise of his or her right to remain silent under the Fifth Amendment, <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965), it is equally well settled that a prosecutor "is otherwise free to comment on a defendant's

failure to call certain witnesses or present certain testimony." <u>Trice v. Ward</u>, 196 F.3d 1151, 1167 (10th Cir. 1999). Here, Petitioner chose to testify at trial and did not exercise his Fifth Amendment right to remain silent. In addition, the prosecutor's comment was clearly directed at Petitioner's failure to present evidence. Therefore, the prosecutor's comment was not improper and Petitioner's complaint that the prosecutor impermissibly attempted to shift the burden of proof by asking why Petitioner had failed to call a certain witness in his defense is without merit. <u>Matthews v. Workman</u>, 577 F.3d 1175, 1188 (10th Cir. 2009). Petitioner is not entitled to habeas corpus relief on this claim.

### f. Personal opinion of guilt and the appropriate punishment

On direct appeal, Petitioner claimed that the prosecutor improperly offered his personal opinion of Petitioner's guilt during closing argument. <u>See</u> Dkt. # 7-1 at 37. In addition, Petitioner argued that the prosecutor improperly recommended a sentence. <u>Id.</u> The record reflects that the prosecutor's comments, that "I don't know why he did what he did, but I do know he did what he's accused of doing," <u>see</u> Dkt. # 8-3, Tr. Vol. III at 129, were made in response to defense counsel's statement that Petitioner had no motive to shoot Barnes. <u>Id.</u> at 124-27.

Generally, prosecutors should not place their own integrity and credibility in issue. <u>See</u> <u>Hopkinson v. Shillinger</u>, 866 F.2d 1185, 1209 (10th Cir.), <u>overruled on other grounds by</u> <u>Sawyer v. Smith</u>, 497 U.S. 227 (1990). Here, however, the statements were made in response to comments of defense counsel. <u>See</u> <u>Darden</u>, 477 U.S. at 182; <u>see also</u> <u>Hopkinson</u>, 866 F.2d at 1210 (recognizing that improper statement made in response to defense counsel's arguments does not make statement proper, but it may affect context in which jury views improper statement). Also, the statement was made in isolation. <u>See</u> <u>Donnelly</u>, 416 U.S. at 647 (determining court should not lightly infer prosecutor intended isolated, ambiguous remark to have most damaging meaning or that jury will

draw that meaning from other less damaging interpretations).  Nor did the prosecutor cross the line from advocate to witness with this isolated statement.  Furthermore, as noted above, the trial court instructed the jury to consider the evidence in the case in making its decision.  For those reasons, the Court finds the remarks were not improper and, when viewed in the context of the entire trial, did not prejudice Petitioner by influencing the jury to stray from its responsibility to be fair and unbiased.  See Young, 470 U.S. at 12, 18; Bland, 459 F.3d at 1024; Cargle v. Mullin, 317 F.3d 1196, 1218 (10th Cir. 2003).

As to Petitioner's claim that the prosecutor improperly gave his personal opinion of the appropriate punishment resulting in an "inflated" sentence, the Court first notes that Petitioner's twenty-five year sentence is not constitutionally excessive.  A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000).  Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute."  Id.  In this case, Petitioner faced "imprisonment in the State Penitentiary not exceeding life."  See Okla. Stat. tit. 21, § 652(A).  Thus, the twenty-five year sentence recommended by the jury for Shooting With Intent to Kill was within the limitations of Oklahoma law.  Also, the sentence recommended by the jury was less than the thirty (30) year sentence requested by the prosecutor. (Dkt. # 8-3, Tr. Vol. III at 141).  As a result, Petitioner's argument that the length of his sentence resulted from prosecutorial misconduct lacks factual support.  There is no basis for habeas relief.

In summary, the Court finds Petitioner's trial was not rendered fundamentally unfair by prosecutorial misconduct.  Petitioner has not demonstrated that the comments by the prosecutor so

infected his trial with unfairness as to deny him due process. <u>Neill</u>, 278 F.3d at 1061 (citing <u>Darden</u>, 477 U.S. at 181). He has failed to convince the Court that the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas corpus relief on his claims of prosecutorial misconduct raised in ground three.

**4. Trial court erred in failing to poll the jury in a timely manner (ground 4)**

As his fourth proposition of error, Petitioner complains that the trial court's refusal to poll the jury in a timely manner produced unreliable verdicts and denied Petitioner's rights to due process and a fundamentally fair trial. <u>See</u> Dkt. # 1 at 10. On direct appeal, the OCCA cited Okla. Stat. tit. 22, § 921 (providing that "[w]hen a verdict is rendered, and before it is recorded, the jury may be polled on the requirement of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation"), as the statutory source for Petitioner's claim. Based on the record provided by Petitioner, the OCCA found the record "inadequate to resolve the issue," and concluded that Petitioner had failed "to establish that the trial court violated section 921." <u>See</u> Dkt. # 7-3 at 17.

To the extent Petitioner claims that the trial judge failed to poll the jury, as required under Oklahoma statutory law, Okla. Stat. tit. 22, § 921, the Court finds the claim should be denied because it is not cognizable on federal habeas corpus review. As discussed above, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. <u>McGuire</u>, 502 U.S. at 67-68. Petitioner's claim based on the trial judge's failure to poll the jury, insofar as it is based on the OCCA's interpretation of an Oklahoma statute, is not cognizable in this federal habeas corpus proceeding and shall be denied on that basis.

Nor has Petitioner demonstrated that his constitutional right to due process was violated by the trial judge's short delay in polling the jury. The record reflects that the jury was polled within only a few minutes of the verdict being read, and that all twelve jurors confirmed that they agreed with the verdict as read. <u>See</u> Dkt. # 8-3, Tr. Vol. III at 145-47; <u>see</u> <u>also</u> Dkt. # 7-1 at 40-42 (for citation to record).

**5. Improper assessment of court reporter fee (ground 5)**

In ground 5, Petitioner alleges that he was incorrectly assessed a court reporter fee for each day of trial, rather than the fee authorized by statute for each trial. <u>See</u> Dkt. # 1 at 12. The OCCA found merit to this claim and ordered the district court to correct Petitioner's Judgment and Sentence nunc pro tunc to reduce Petitioner's costs to a single $20.00 court reporter fee. <u>See</u> Dkt. # 7-3 at 17-18.

Because Petitioner received relief on this claim from the state courts, it is now moot. "Article III of the United States Constitution only extends federal judicial power to cases or controversies." <u>United States v. Meyers</u>, 200 F.3d 715, 718 (10th Cir. 2000). "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." <u>Aragon v. Shanks</u>, 144 F.3d 690, 691 (10th Cir. 1998). To satisfy the case or controversy requirement, the petitioner "must have suffered or be threatened with an actual injury traceable to the respondents and likely to be redressed by a favorable judicial decision." <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998) (quoting <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 477 (1990)). A petitioner must "continue to have a personal stake in the outcome" of his case in order to satisfy the case or controversy requirement of Article III. <u>Id.</u>

As to ground five, the relevant inquiry is whether the ground still presents a case or controversy under Article III which could be redressed by a favorable decision. Id. The answer in Petitioner's case is "no." Clearly, Petitioner's request for relief on ground 5 in this habeas action is moot since the OCCA granted Petitioner's requested relief when the case was raised on direct appeal. Therefore, Petitioner's request for relief on ground 5 shall be denied on that basis.

**6. Ineffective assistance of trial counsel (ground 6)**

In ground 6, Petitioner alleges that trial counsel provided ineffective assistance when he failed to preserve the issues raised in direct appeal propositions 1-3 for appellate review. See Dkt. # 1 at 12. On direct appeal, the OCCA cited Strickland v. Washington, 466 U.S. 668, 687, 693 (1984), and found that, even if trial counsel had lodged objections, the results of the trial would remain the same. See Dkt. # 7-3 at 19-22.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).

The Court finds that Petitioner cannot satisfy the Strickland standard. He has failed to demonstrate a reasonable probability that the outcome of his trial or his appeal would have been different had his trial counsel lodged objections necessary for appellate review of propositions 1-3, as raised on direct appeal. As his first claim, Petitioner alleges that trial counsel provided ineffective assistance when he failed to lodge an objection when the prosecutor asked questions of Warring that allegedly infringed on his right to remain silent. During that testimony, Warring stated that after he had been handed a telephone and told that the caller was Petitioner, the caller mumbled something and hung up. See Dkt. # 8-1, Tr. Vol. I at 190. In response to questioning by the prosecutor, Warring confirmed that the caller did not say that he wanted to report a crime, that he had been the victim of a crime, that he had been shot, that he needed medical attention, or that he had to defend himself against a gunman. Id. at 190-91. That information was used by the prosecutor to cast doubt on Petitioner's defense of self-defense. However, even if trial counsel had objected and the objection were sustained, Petitioner cannot demonstrate, in light of the other evidence presented at

22

trial, that the result of his trial would have been different. Other witnesses, including Bryce Cleaver, Coleman McIlvain, Julia Jones, and Angie Green, testified that, shortly after the shooting, they did not observe Petitioner to be injured or Petitioner did not complain of being injured. <u>See</u> Dkt. # 8-1, Tr. Vol. I at 200-01; Dkt. # 8-2, Tr. Vol. II at 118, 121, 149, 155. In addition, Andrew Kinney testified that he talked to Petitioner on the telephone the day after the shooting and Petitioner did not complain of being injured. <u>See</u> Dkt. # 8-2, Tr. Vol. II at 11. That evidence demonstrates that Petitioner was not prejudiced by trial counsel's failure to object to the testimony of Warring.

Next, Petitioner complains that trial counsel provided ineffective assistance in failing to identify and utilize evidence of McIlvain's bias. That bias purportedly resulted from the lenient treatment McIlvain hoped to received from the prosecutor in exchange for his testimony against Petitioner. Again, in light of other evidence presented by the State, Petitioner cannot satisfy the prejudice prong of the <u>Strickland</u> standard. <u>See</u> <u>Van Arsdall</u>, 475 U.S. at 684. Because McIlvain's testimony was cumulative of and corroborated by other witnesses' testimony, Petitioner cannot demonstrate that the result of his trial would have been different had trial counsel presented evidence challenging McIlvain's credibility.

Lastly, Petitioner complains that trial counsel provided ineffective assistance in failing to object to improper comments made by the prosecutor during closing argument. However, as discussed above, none of the prosecutor's comments were improper. Therefore, there was no prosecutorial misconduct. Trial counsel does not perform deficiently by failing to object where the objection lacks merit. <u>See</u> <u>Sperry v. McKune</u>, 445 F.3d 1268, 1275 (10th Cir. 2006) (explaining trial counsel's failure to raise a meritless issue is not ineffective assistance).

In summary, Petitioner has failed to demonstrate that the OCCA's adjudication of his claim of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, Strickland.  Therefore, Petitioner is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

### 7.  Cumulative error (ground 7)

In ground 7, Petitioner claims that "the cumulative effect of all the errors addressed above deprived [him] of a fair trial."  See Dkt. # 1 at 12.  The OCCA denied relief on this claim, finding that "[b]ecause we have examined each of Moore's allegations in detail and found at most one harmless error, relief is not warranted on this claim."  See Dkt. # 7-3 at 22.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted).  Cumulative error analysis is applicable only where there are two or more actual errors.  Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003).  Cumulative impact of non-errors is not part of the analysis.  Le, 311 F.3d at 1023 (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)).  In this case, the Court did not find two or more actual errors.  As a result, there is no basis for a cumulative error analysis.  Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d).

## C. Certificate of appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of the AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. <u>See</u> <u>Dockins v. Hines</u>, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.    The Clerk of Court shall note on the record the substitution of Robert Patton, Director, in

place of Mike Addison, Warden, as party respondent.

2.    The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.    A separate judgment in favor of Respondent shall be entered in this matter.

4.    A certificate of appealability is **denied**.


**DATED** this 13th day of April, 2015.


CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE